UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

*******************************************

J. Keith Radecic,
    Plaintiff

v.

Southern New Hampshire
Radiology Consultants, P.C.,
    Defendant

Docket No.:

**JURY TRIAL DEMAND**

*******************************************

# COMPLAINT

## I. PARTIES

1. The Plaintiff J. Keith Radecic resides at 43 Garfield St., Unit 1, Manchester, New Hampshire, 03103.

2. The Plaintiff was an employee of the Defendant Southern New Hampshire Radiology Consultants, P.C., (SNHRC) with a principal place of business located at 703 Riverway Place, Bedford, New Hampshire, 03110.

## II. JURISDICTION AND VENUE

3. Mr. Radecic's claims arise under Title I of the Americans with Disabilities Amendments Act (ADAA) of 2008, 42 U.S.C. § 126, et seq., including but not limited to § 12117, which incorporates by reference 42 U.S.C. § 2000e-5 and amendments thereto. (Hereinafter "The Americans with Disabilities Act as Amended" or "ADAA"); and under N.H. RSA chapter 354-A. Mr. Radecic requests that the Court exercise pendent jurisdiction over Count 5, his state law claims, which claims arise out of the same facts that give rise to his claims under the ADAA.

1

## III. FACTS COMMON TO ALL CLAIMS

4. On December 1, 2017, the Charging Party, J. Keith Radecic, commenced his employment at SNHRC as its Chief Executive Officer, in accordance with a written employment agreement.

5. Thereafter, Mr. Radecic served in that capacity, growing the business significantly, increasing its profitability, and managing its day-to-day operations.

6. On Tuesday, June 18, 2019, Mr. Radecic came into the office in the morning as usual. However, Mr. Radecic discovered that telephone capabilities supplied by Comcast to the business were not working. As a result, the business lost functionality of essential capabilities, including remote access to Tele–Radiology and other dial-in communication tools critical to the professional staff, including the radiologists. Essentially, the business operations of SNHRC ceased.

7. As a result, Mr. Radecic contacted Comcast personnel and discovered that Comcast had changed internal software platforms, resulting in the loss of functionality, all without providing him or SNHRC with advanced notice.

8. In Mr. Radecic's response, over the phone, he made insistent demands of Comcast personnel to restore critical functionality. The discussions were heated. In response, his staff at one point shut the door to his office.

9. Thereafter, Mr. Radecic's staff apparently complained to the HR Manager about his outburst.

10. In response, the decision was made that Mr. Radecic would take a week of vacation and come back with a corrective-action plan to placate the complaints of the staff.

11. In accordance with the agreement of all concerned, Mr. Radecic submitted to the Leadership Physicians of SNHRC and its HR Manager a proposed memo to the staff apologizing for his behavior and a plan to seek additional counselling for anger management issues.

12. On Jun 19, 2019, at 11:16 a.m., Mr. Radecic sent an email to the HR Manager and members of its Board stating:

> Please see the attached memo I would like to provide to the office staff based on the interactions yesterday and events leading up to today. Do you feel this is appropriate and something you could support in my sending to the staff? If you have edits, please let me know what they might be. Do you think that this memo would help?

13. In reply, Leadership Physicians and Board members responded favourably, indicating that Mr. Radecic's proposed apology and proposed corrective actions were appropriate. Dr. Peter van de Meer, on behalf of the Physician Leadership of the Board of SNHRC, replied to him by email dated June 19 as follows:

> Hi Keith,
> It's a really nice letter. I wouldn't modify anything that so clearly comes from your heart. ...
> Please get some rest, and tell us in due time what some the specifics of the measures are you intend to put in place as part of your self-improvement plan, not only so we can be

>    reassured, but also so we can help you. We care about you!
>
>    Best wishes,
>
>    Peter

14. In fact, later on June 19, 2019, Mr. Radecic went back to the office at about 4:15 p.m. Mr. Radecic picked up his laptop to continue doing work while out of the office. Mr. Radecic also met with the HR Manager Denise Kilmer. During Mr. Radecic's conversation with Ms. Kilmer, she told him that HR valued him, encouraged him to seek treatment, and told him that his job was not at risk. Also, Ms. Kilmer, thereafter, in conversations with Mr. Radecic's wife, assured her that his job was not at risk.

15. Said email from Dr. Peter van de Meer indicates that the Physician Leaders of the organization were willing to accommodate Mr. Radecic's disability, but then the Board abruptly decided not to continue the dialog about accommodating his disability and terminated his employment in 90 days and provided him with 90 days of continued employment benefits in accordance with his contract of employment for a separation of services on a not-for-cause basis.

16. By letter dated June 25, 2019, from the Respondent's corporate counsel, Mr. Radecic was informed that:

>    … at its meeting on June 21, 2019, the Board of Directors of Southern New Hampshire Radiology Consultants, (the "Corporation") voted unanimously to terminate your Employment Agreement with the Corporation dated December 1, 2017 (the "Agreement") pursuant to Section 13 of the Agreement.

Section 13 of the Agreement provides that either party may terminate the Agreement by providing the other party with 90 days prior written notice. This letter serves as such notice from the Corporation, such that your employment with the Corporation will terminate effective as of September 22, 2019 (the "Termination Date").

17. As was made clear in said letter and in subsequent discussions, SNHRC was not terminating Mr. Radecic for cause.

18. Mr. Radecic was never informed by anyone on behalf of SNHRC that he was being terminated for cause related to any alleged employment-related misconduct.

19. SNHRC did not terminate Mr. Radecic for cause related to any alleged employment-related misconduct.

20. Because of past concussions and/or sub-concussive hits to the head sustained while Mr. Radecic played football, including with the St. Louis Cardinals, Mr. Radecic has a form of chronic traumatic encephalopathy (CTE), a mental disability, that exhibits itself occasionally by his experiencing some executive function/response inhibition issues (commonly phrased as anger-management problems).

21. Notwithstanding this mental disability, Mr. Radecic functioned during his tenure at the SNHRC at a very high capacity, growing the organization's business, resulting in his receiving favorable performance evaluations as well as being awarded significant bonuses.

22. Although admittedly Mr. Radecic had an inappropriately angry response to failures by Comcast to address Internet service issues that seriously

5

undercut the organization's ability to conduct business, Mr. Radecic believed and still believes that a reasonable accommodation could be reached to allow him to resume his duties and continue to function as the Executive Director of the business.

23. With Mr. Radecic's proposed apology memo and an accommodation to allow him to step up cognitive therapy, he could have continued to perform his essential job functions as CEO of the organization.

24. HR Manager, Denise Kilmer, was aware of Mr. Radecic's ongoing treatment in therapy dealing with his CTE condition and even encouraged him to pursue additional treatment if needed.

25. Also, Board members were aware of Mr. Radecic's therapy sessions related to his CTE condition.

26. The email exchange on June 19 between and the Leadership Physicians of the Board of SNHRC indicated to Mr. Radecic that the parties had commenced a dialog to explore a reasonable accommodation for his mental disability.

27. This discussion, however, was abruptly cancelled, without explanation, resulting in a unilateral decision by the Board on June 21 to terminate Mr. Radecic's employment with SNHRC.

28. After June 21, Mr. Radecic followed through with the plan to seek medical and therapeutic treatment for his condition, including at Parkland Medical Center for Emotional Wellness, Derry, New Hampshire. His therapist,

Elizabeth Ann Williams, APRN, FNP – BC, in her clinical note dated 8/5/19 wrote:

> Over the past four weeks, Mr. Radecic has engaged in intensive cognitive behavioral therapy and dialectical behavioral therapy to address these outbursts. He has mastered various coping skills and behavioral techniques with resolution of this behavior.
> In addition to these therapies, the patient was optimized on Cymbalta for depressive symptoms and chronic pain with resolution of his depressive symptoms and improvement of chronic lower back and sciatic pain and diabetic neuropathy. He was also referred to neurology for an evaluation and will be following up with pain clinic with his primary care physician if needed for his chronic back pain.
> Mr. Radecic completed the program on 8/3/19. He has been fully engaged in treatment and will be following up with his outpatient providers for maintenance therapy and medication management. Mr. Radecic may return to work without any restrictions. It has been a pleasure participating in his care.

29. Mr. Radecic's employment with the Defendant was terminated because of his disability or the perception that he was disabled but without a reasonable consideration of his desire to be accommodated.

30. As a direct and proximate result of Mr. Radecic's employer's disability discrimination, he has suffered and continue to suffer damages, including lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

## IV. CLAIMS FOR RELIEF

### Count One: Employment Discrimination in Violation of the ADAA

31. The Plaintiff hereby incorporates by reference all allegations set forth above at Paragraphs 1 through 30 inclusive.

32. At all relevant times, J. Keith Radecic resided in New Hampshire. Mr. Radecic suffers from chronic traumatic encephalopathy, a mental disability, and is therefore considered disabled under the terms of the ADAA and RSA § 354-A:2, IV.

33. At all relevant times, SNHRC was an employer in New Hampshire.

34. At all relevant times, SNHRC employed Mr. Radecic.

35. Mr. Radecic timely filed with the New Hampshire Commission for Human Rights a Charge of Discrimination alleging that he was the victim of disability discrimination under state and federal law.

36. By notice dated April 6, 2020, Mr. Radecic received from the EEOC a right to pursue his disability discrimination claims in this Court.

37. At all relevant times, SNHRC employed Mr. Radecic as its Chief Executive Officer.

38. SNHRC is an "employer" and a "person" within the meaning of the ADA, 42 U.S.C. § 12111(5)(a) and § 12111(7) and 42 U.S.C. § 2000e(b) and § 2000e(a).

39. Mr. Radecic was an employee within the meaning of 42 U.S.C. § 12111(4).

40. Mr. Radecic was a "qualified individual" who with or without reasonable

accommodation could perform the essential functions of the full-time job from which he was terminated.

41. Mr. Radecic's mental health disability episodically impaired his major life activities, including concentrating, thinking, communicating, interacting with others, and regulating his emotions and thoughts.

42. SNHRC was required to engage in an "interactive process" to determine if there was a reasonable accommodation by which Mr. Radecic might better meet his employer's requirements for continued employment and not discriminate against him for requesting accommodations.

43. Mr. Radecic's employer engaged in discriminatory behavior as stated *supra*.

44. As a proximate result of the SNHRC's willful and wanton unlawful conduct, Mr. Radecic has suffered losses, including, lost back wages, lost future wages, pain and suffering, injury to his reputation and other losses as more fully set forth in his Prayer for Relief.

45. Mr. Radecic requested reasonable accommodations from SNHRC as stated *supra*.

46. SNHRC refused to accommodate him as such. SNHRC's failure to reasonably accommodate an employee's disabilities is a violation of the ADAA.

47. As a proximate result of SNHRC's malicious, or at least, reckless disregard for Mr. Radecic's rights protected under federal and state law, Mr. Radecic has suffered losses as more fully set forth in his Prayer for Relief.

**Count Two: Employment Discrimination Based Upon Perceived Disability**

48. The Plaintiff hereby incorporates by reference all allegations set forth above at Paragraphs 1 through 47 inclusive.

49. In the alternative, whether or not Mr. Radecic was disabled at the time of the incident, SNHRC subsequently perceived him as disabled and the subsequent discriminatory treatment and termination of him resulted from SNHRC's perception that Mr. Radecic had a disabling impairment, which was not transitory (i.e., which was not expected to last less than six months) and its determination that, as a result, it did not want to continue his employment, all in violation of the ADAA, 42 U.S.C. § 12102(1)(C) and RSA chapter 354-A.

50. As a result, Mr. Radecic has suffered a loss of enjoyment of life, embarrassment, affiliation, career harm and financial losses in back in front pay and benefits and attorney's fees and costs.

**Count Three: Employment Discrimination Based upon Mr. Radecic's Having a Record of a Disability**

51. The Plaintiff hereby incorporates by reference all allegations set forth above at Paragraphs 1 through 50 inclusive.

52. In the alternative, whether or not Mr. Radecic was disabled at the time of the incident, Mr. Radecic had a record of a disability based on his mental disability due to chronic traumatic encephalopathy. Because of this record of a mental disability, SNHRC, through the actions of its employees and agents, subsequently discriminated against him and ultimately decided that it did not want to continue his employment and thus terminated him, all in violation of the ADAA, 42 U.S.C. § 12102(1)(B).

**Count Four: Employment Discrimination in Violation of RSA Chapter 354-A**

53. The Plaintiff hereby incorporates by reference all allegations set forth above at Paragraphs 1 through 52 inclusive.

54. As a proximate result of SNHRC's malicious, or at least, reckless disregard for Mr. Radecic's rights protected under New Hampshire state law, Mr. Radecic has suffered losses as more fully set forth in his Prayer for Relief, all in violation of RSA 354-A:7.

**WHEREFORE,** the Plaintiff Demands Judgment against the Defendant for the following:

   a) salary and benefits, and accrued interest thereon, for all periods, past, present, and future, during which the Plaintiff has suffered or will suffer lost wages and/or lost earning capacity;

   b) compensatory damages for Plaintiff's mental anguish, pain and suffering, and other nonpecuniary losses;

   c) enhanced compensatory damages and punitive damages in an amount to be determined at trial;

d) Plaintiff's attorney's fees and costs; and

e) for such other and further relief as may be just and equitable.

Respectfully submitted,

J. KEITH RADECIC

By his attorneys,

SHAHEEN & GORDON, P.A.

Dated: 04/22/20

By: \s\ Francis G. Murphy
Francis Murphy, Esquire
NH BAR ID 1840
80 Merrimack Street
Manchester, NH 03101
(603) 669-8080
fmurphy@shaheengordon.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing document using the CM/ECF system, which will send notification of said filing to all counsel of record.

Dated: 04/22/20

By: \s\ Francis G. Murphy
Francis Murphy, Esquire